IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL ROARTY-NUGENT,** | ) | CASE NO. 1:20 CV 1025 |
| | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **CUYAHOGA COUNTY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on the Motion of Defendant Eric Ivey to dismiss all of the claims asserted against him in his individual capacity for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF #14)

**Factual and Procedural Background**

Plaintiff, Michael Roarty-Nugent, filed this action against Defendants Cuyahoga County, and several Cuyahoga County executives, officials and corrections officers in their individual capacities including Eric Ivey. Plaintiff's claims arise out of events that happened on April 4, 2018, when Plaintiff was an inmate in the Cuyahoga County Corrections Center ("CCCC" or the "jail"). The Complaint identifies Defendant Ivey as "the jail's warden from 2017 until February 2019 when he was demoted to associate warden over an alleged nepotism violation. He resigned in the fall of 2019 after pleading guilty to falsification and obstruction of justice related to the death of an inmate at the jail. At all times relevant, he was responsible for the jail's operation and acting under color of state law." (Complaint, ECF #1-1 at ¶ 16) Plaintiff's Complaint asserts twenty causes of action against the various Defendants. Only Counts 17 and 18 are asserted

against Defendant Eric Ivey and the other "Policymaking Defendants.[1]" Count 17 is entitled "Fourteenth Amendment Violation Under 42 U.S.C. § 1983 for Deliberative Indifference/Failure to Train and Supervise Corrections Officers and Personnel Within the Jail (against Defendants Budish, Leiken, Taylor, Pinkney, Mills, and Ivey). (ECF #1-1, p. 86) Count 18 is entitled Civil Liability for Criminal Acts Under R.C. 2307.60(A)(1) (Against Defendants Budish, Leiken, Taylor, Pinkney, Mills and Ivey). (ECF #1-1 at p. 89)

Plaintiff alleges that on April 4, 2018, Defendant Corrections Officer Johnson was passing out breakfast trays and that when Plaintiff stepped forward to take the tray, Officer Johnson slammed the cell door. Plaintiff states that his foot was in the way of the cell door and he reached out to stop the door from closing on his foot. (ECF #1-1, ¶ 41) Officer Johnson allegedly accused Plaintiff of disrespecting her or trying to strike her and called Defendant Corporal Boardman. (Id. ¶¶42-43) Following that call two Special Response Team officers, Defendants Smith and Graham, came to Plaintiff's cell. Defendants Smith and Graham instructed Plaintiff to bundle his belongings into his bed sheet and then handcuffed Plaintiff. Defendant Boardman arrived as Plaintiff was being escorted from his cell. Plaintiff alleges that Defendant Smith repeatedly pushed Plaintiff into the wall on the way to the elevator and told him to do something and to stop resisting even though Plaintiff states that he did not resist and complied with all commands. (Id. ¶¶48-49) After they exited the elevator on the 6th floor,

---

[1] Plaintiff identifies Defendants Armond Budish, the Cuyahoga County Executive, Earl Leiken, the County Executive's Chief of Staff, George Taylor, Interim Director of Cuyahoga County Jails, Kenneth Mills, Cuyahoga County's Director of Regional Corrections until he resigned in November 2018, and Eric Ivey, Warden of CCCC from 2017 until February 2019, as the "Policymaking Defendants." See Complaint, ¶24. Counts 17 and 18 are also asserted against Clifford Pinkney, the Cuyahoga County Sheriff until August 2019.

Plaintiff states that Defendant Smith slammed him to the floor face down, while he was still handcuffed, and began kicking him all over his body, including his genitals. Plaintiff asserts that Defendants Boardman, Smith and Graham all actively participated in the beating. Plaintiff alleges that one or more of the corrections officers bent his legs toward his back while holding his handcuffed hands behind his back and that Defendant Smith sprayed an excessive amount of pepper foam all over his face from just a few inches away for three to five seconds. Plaintiff states that he has asthma and felt like he could not breathe through the pepper foam which was all over his mouth and nose. While he was coughing and struggling to breath, and asking for help, none of the corrections officers standing around offered help. (Id. ¶¶ 54-58)

Plaintiff was strapped into a restraint chair while his face was covered in burning pepper foam. The chair was wheeled to a utility closet that was called the "slop room." In that room he was read the "O.C. Administrative Warning" and Plaintiff's face was briefly splashed with water three times. Plaintiff asked for more water but was denied. Plaintiff states that the water made the burning pain in his eyes worse and complained that his skin was burning. The corrections officers told him if he needed to spit to spit on his shirt. Plaintiff states that he told the officers that he could not breathe, but that Defendant Boardman told him that if he could talk, he could breathe. (Id. ¶¶ 61-66) Next, Plaintiff's restraint chair was wheeled to the medical dispensary where the medical staff loosened the restraints and wiped Plaintiff's eyes, which he claimed did not stop the burning. (Id. ¶68) After the brief stop in the medical dispensary, Plaintiff's restraint chair was placed into a freezing cold wait room for approximately four hours. Plaintiff was wet, cold, hurting and struggling to breathe and repeatedly called out for help which did not come. (Id. ¶¶69-70)

Following his time in the "wait room," Plaintiff spent 11 days in disciplinary isolation or "the hole" where Defendants Boardman, Smith and Graham came to his cell and allegedly threatened Plaintiff, telling him that he could not hit a female officer or touch any of Defendant Boardman's officers. Defendant Boardman allegedly told Plaintiff that they "would come in the middle of the night and finish the job" and "beat his ass." Plaintiff states that he was not permitted to take a shower for about one day and his clothes were confiscated, leaving him to spend his time in isolation in his underwear. (Id. ¶¶ 71-75)

The Complaint further alleges that Defendants Johnson, Smith and Graham filed "materially false" reports to justify the attack on Plaintiff and that the County destroyed the evidence of its employees' conduct and interfered with Plaintiff's efforts to collect evidence. Specifically, Plaintiffs pepper foam and water covered clothes were confiscated; the jail only produced body worn camera footage that began after Plaintiff was sprayed and was laying handcuffed on the ground and claimed that it did not have surveillance footage of the interactions between Plaintiff and the Defendant officers, despite the presence of wall mounted cameras throughout the jail. (Id. ¶¶ 96-108)

The Complaint details the findings of the United States Marshals Service from its investigation of the jail in October-November 2018 as well as the Cuyahoga County Inspector General's report which strongly concurred with the Marshals Report, noting that the Inspector General sent a referral memorandum and his February 12, 2019 report to the Ohio Attorney General to refer the matter for prosecution. (Id. ¶¶ 109-140) Thereafter, the Complaint details acts of punitive violence and use of pepper spray against a number of inmates and describes how the County allegedly engaged in racially disparate decontamination practices. (Id. ¶¶ 141-323)

Plaintiff alleges that under Defendants Mills and Ivey, there was a widespread belief among the corrections officers that jail management retaliated against employees who report misconduct and that the corrections officers retaliated against inmates who complained. (Id. ¶35) Plaintiff also alleges that the "Policymaking Defendants," including Ivey, were the moving force in creating conditions in which the use of excessive force prevails. (Id. ¶38) Defendants Ivey and Mills were responsible for reviewing the use-of-force incident reports to ensure compliance with jail policy. (Id.¶ 39) It was Defendant Ivey's official policy for staff to avoid using their body-worn cameras as the written policy required in order to avoid creating footage that would aid or assist victims in making their claims against the County and jail. (Id. ¶¶ 497-498) Defendants Smith, Graham and Boardman followed Mr. Ivey's policy and failed to record their attack on Plaintiff, "making it Plaintiff's word against a slew of corrections staff as to what was said and done during those moments." (Id. ¶ 497)

### Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. Ky. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Twombly, 550 U.S. at 555; Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000). In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement

to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Ohio Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. Ohio 2001).

### Discussion

Defendant Ivey moves to dismiss both of the claims asserted against him. Mr. Ivey argues that he is entitled to qualified immunity on Plaintiff's § 1983 claim and that Plaintiff's claim under R.C. 2307(A)(1) is barred by the statute of limitations.

### A. § 1983 Claim

Plaintiff's seventeenth claim alleges a violation under § 1983 for deliberate indifference/failure to train and supervise corrections officers and personnel within the jail against the policymaking defendants, including Defendant Ivey. Mr. Ivey contends that the §1983 claim must be dismissed against him because he is entitled to qualified immunity.

"[Q]ualified immunity shields officials from civil liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Richmond v. Huq*, 885 F.3d 928, 947 (6th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). To survive a motion to dismiss on qualified immunity grounds, the complaint must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The complaint must also allege with particularity "facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)(internal citations and quotation marks omitted). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Heyne*, 655 F.3d at 562–63.

Thus, to determine whether qualified immunity applies in a given case, we use a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, we determine whether the allegations give rise to a constitutional violation; and (2) we assess whether the right was clearly established at the time of the incident. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. Ohio 2012); see also *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We can consider these steps in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Sixth Circuit has recognized that while "insubstantial claims against government

officials should be resolved as early in the litigation as possible," "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)(internal citations omitted). Indeed, the Sixth Circuit has held "an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-434 (6th Cir. 2015)(internal citations omitted).

1. Plaintiff's allegations give rise to a constitutional violation

To establish personal liability under § 1983, a Plaintiff must show that "the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (because there is no vicarious liability in § 1983 suits, a plaintiff must plead that each government defendant, "through the official's own actions, has violated the Constitution.") Thus, in order to state an individual capacity claim against a government official, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Fluker v. Cuyahoga Cty*, No. 1:19 CV 318, 2019 WL 3718619 at *6 (N.D. Ohio Aug. 7, 2019) *citing Frazier v. Michigan*, 41 F.App'x 762, 764 (6th Cir. 2002). "A supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) *citing Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)(emphasis added). The Sixth Circuit has interpreted this standard

"to mean that 'at a minimum,' the plaintiff must show that the [supervisory] defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id*. Additionally, there must also be a "causal connection between the defendant's wrongful conduct and the violation alleged."*Id*. at 242. This requires a plaintiff to demonstrate that a supervisor's conduct "could be reasonably expected to give rise to just the sort of injuries that occurred." *Campbell v. City of Springboro*, 700 F.3d 790 (6th Cir. 2012).

Two Sixth Circuit cases are instructive as to the pleading requirements to establishment acquiescence in a subordinates unconstitutional conduct. In *Coley v. City of Lucas Cty*, 799 F.3d 530 (2015), the family of a prisoner who died after a police officer put him in a chokehold sought to hold the sheriff, James Telb, personally liable for his subordinates' conduct. The court of appeals found that the plaintiff had sufficiently alleged that Telb knowingly acquiesced in the officer's conduct where the Complaint stated that Telb had a duty to train and supervise sheriff department employees to avoid use of excessive force; that Telb failed to train and supervise staff regarding the proper use of force, including on the specific use of chokeholds; that Telb failed to properly investigate use of excessive force; and that Telb help to cover up the subordinates unconstitutional actions by deliberately making false statements to federal officials. *Id*. at 542. In *Peatross*, which involved a police shooting, the family of the decedent sought to hold the Director of the Memphis Police Department, Toney Armstrong, liable as a supervisor. 818 F.3d at 236–37. The Complaint alleged, that Armstrong "failed to train and supervise the officers to avoid the use of excessive force, failed to investigate the allegations of excessive force properly, and attempted to cover-up the unconstitutional conduct of his subordinates by exonerating the officers in an effort to escape liability." *Id*. at 243. The allegations in *Peatross*,

however, went one-step further than *Coley*, alleging that there had been fifty-four police shootings in the previous five years and that, despite Director Armstrong's acknowledgment of "a dire need to review and improve the police department's operations" and "its disciplinary process" no improvements were made. *Id.*

In his motion to dismiss, Defendant Ivey does not address whether Plaintiff adequately pled an excessive force claim against Mr. Ivey's subordinates, apparently assuming for the purposes of his motion that such a claim was adequately pled. Plaintiff took the extra step to describe why the complaint asserted a plausible claim for excessive force in violation of the Fourteenth Amendment against Mr. Ivey's subordinates Smith, Graham and Boardman. Thus, for the purposes of this analysis, the Court will assume that the Complaint adequately pleads an excessive force claim against Mr. Ivey's subordinates and move directly to the issue of whether the complaint alleged facts to state a plausible claim for supervisory liability based on Mr. Ivey's failure to train, supervise and investigate.

Plaintiff argues that as was the case in *Peatross*, he has alleged facts demonstrating that Mr. Ivey failed to train and supervise the officers involved in this action regarding their use of force, failed to properly investigate excessive force incidents and instructed his officers not to use their body cameras during use of force incidents in order to cover up the incidents to help derail potential lawsuits. He has also set forth prior use excessive use of force incidents at the jail and has alleged that Mr. Ivey's instructions regarding the use of body cameras and his overlooking the use of excessive force "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct." *Peatross*, 818 F.3d at 242, citing *Sheehee*, 199 F.3d at 300.

Further, under the reasoning in *Peatross*, Plaintiff has sufficiently alleged a causal connection between Mr. Ivey's conduct and the excessive force violation inflicted upon him by the corrections officers. Plaintiff has alleged that it was Mr. Ivey's job to review the use of force reports to ensure compliance with jail policy. As such, Mr. Ivey knew that the use of force incidents at the jail were increasing. Indeed, the complaint specifically references several prior use of force incidents that occurred during Mr. Ivey's time as warden. Further, the complaint alleges that staff understood that jail management retaliated against employees who report misconduct and that the corrections officers retaliated against inmates who complained. In the face of these issues, Mr. Ivey compounded the problem by instructing officers not to use their body cameras while engaging in physical confrontations. Based upon the rising incidents of violence, Mr. Ivey's instructions and his rubber stamping of use of force the reports, Plaintiff's injuries here were foreseeable. *See Peatross*, 818 F.3d at 244 (causal connection established where plaintiff alleged that Chief was involved in creating and enforcing department policies, did not punish officer use of excessive force, failed to take action in face of growing use of excessive force by officers and 'rubber stamped' officer misconduct.) Accordingly, Plaintiff's complaint plausibly alleges a claim of supervisor liability.

2. Was the Constitutional right clearly established?

In determining this second element of the qualified immunity test in a situation involving supervisor liability, the court first examines whether the right the subordinate officers violated was clearly established. As noted above, the Court is assuming for purposes of this motion, that the complaint adequately alleges an excessive force claim in violation of the Fourteenth

Amendment by Mr. Ivey's subordinates Boardman, Smith and Graham. At the time of the incident at issue here, it was clearly established that the Eighth Amendment (as applied to state governments by the Fourteenth Amendment) prohibits corrections officers from inflicting unnecessary and wanton pain upon inmates. *William v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Specifically, courts have found a constitutional violation when an inmate was gratuitously assaulted while fully restrained and subdued. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1993). Thus, prisoners, such as Plaintiff, had a clearly established right not to be assaulted while fully restrained well before April 4, 2018.

Moreover, before April 4, 2018, it was clearly established law in the Sixth Circuit that jail officials could be held liable in supervisory liability claims for their subordinates' use of excessive force against inmates. *Coley*, 700 F.3d 530, 541-542 (6th Cir. 2015). Thus, Mr. Ivey should have been aware of his potential supervisory liability for his subordinates' actions in this instance.

As such, Mr. Ivey is not entitled to qualified immunity on Count 17 at this time.

**B. Civil Liability for Criminal Acts under R.C. 2307.60(A)(1)**

Count 18 of the Complaint purports to assert a claim against Defendants Budish, Leiken, Taylor, Pinkney, Mills and Ivey for civil liability for criminal acts under R. C. 2307.60(A)(1). Ohio Rev. Code § 2307.60(A)(1) provides, "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by

section 2315.21 or another section of the Revised Code."

"[C]laims brought under O.R.C. § 2307.60(A)(1) are subject to a one-year statute of limitations, because the statute "'contemplates a penalty.'" *Marquardt v. Carlton*, Case No. 1:18 CV 333, 2019 U.S. Dist. LEXIS 58402, *6-7 (N.D. Ohio Apr. 2, 2019)(citing *State ex rel. Cty. of Cuyahoga v. Jones Lang Lasalle Great Lakes Co.*, 2017 Ohio 7227, 131 (8th Dist. Ohio Ct. App. 2017); *Gray v. Newman*, 2008 Ohio 1076, 26 (8th Dist. Ohio Ct. App. 2008)); see also *Steinbrick v. Cleveland Elec. Illuminating Co.*, Case No. 66036, 1994 Ohio App. LEXIS 3756, *5 (8th Dist. Ohio Ct. App. 1994)). The criminal conduct alleged in the Complaint occurred on April 4, 2018. Plaintiff's Complaint in this case was filed on May 11, 2020. Accordingly, Plaintiff's claim for Civil Liability for Criminal Acts is barred by the one-year statute of limitations.

## Conclusion

For the reasons stated above, Mr. Ivey's Motion to Dismiss (ECF #14) is granted in part and denied in part. The motion to dismiss is denied as to Count 17 and granted as to Count 18.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: September 15, 2020